## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA
## SPARTANBURG DIVISION

| | |
|---|---|
| ROBERT HUMPHRIES, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>HARLEY-DAVIDSON, INC.,<br><br>Defendant. | **Civil Action No.**<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff, Robert Humphries ("Plaintiff"), individually and on behalf of all others similarly situated, respectfully submits the following Class Action Complaint against Defendant Harley-Davidson, Inc. ("Harley-Davidson" or "Defendant"). Plaintiff makes the following allegations, except as to allegations specifically pertaining to Plaintiff, upon information and belief based on, among other things, the investigation of counsel and review of public documents.

### PRELIMINARY STATEMENT

1.      Motorcycle manufacturers must follow certain basic rules and procedures. When a motorcycle manufacturer sells a motorcycle, it has a duty to ensure that the motorcycle functions properly and safely for its advertised use and is free from defects. Upon discovering a defect, a motorcycle manufacturer must explicitly disclose the defect and either correct the defect or cease selling the motorcycle. When a motorcycle manufacturer provides a warranty, it must stand by that warranty. This case arises from Defendant's breach of its duties and rules.

2.     Plaintiff brings this action on behalf of himself, and all similarly situated persons who purchased or leased any of the following motorcycles, which are defective ("Class Motorcycles")[1]:

     a) 2018-2019 FLDE;

     b) 2018-2021 FLHC;

     c) 2018-2023 FLHCS;

     d) 2018 and 2023 FLHCS ANV;

     e) 2020-2023 FXLRS;

     f) 2022-2023 FXLRST; and

     g) 2022 FXRST

3.     Plaintiff brings this action to remedy various violations of law in connection with Defendant's manufacturing, marketing, advertising, selling, warranting, and servicing of the Class Motorcycles.

4.     Specifically, these Class motorcycles have a fastener securing the rear shock absorber which may break ("Fastener Defect") and allow the rear shock absorber adjuster to damage the rear tire, causing a loss of tire pressure. A loss of tire pressure can lead to a loss of vehicle control, all but guaranteeing a crash.[2]

5.     In August of 2023, Defendant recalled the Class Motorcycles. In total, this Recall included over 65,000 motorcycles produced by Defendant Harley-Davidson.[3]

---

[1] https://www.consumeraffairs.com/recalls/harley-davidson-recalls-65000-2018-2023-motorcycles-090823.html (last visited October 30, 2023).
[2] *Id.*
[3] *Id.*

6.     The allegations herein are based on personal knowledge as to Plaintiff's own experience and are made as to other matters based on an investigation by counsel, including counsel's analysis of publicly available information.

## JURISDICTION AND VENUE

7.     This Court has subject matter jurisdiction over this action under the Class Action Fairness Act, the relevant portion of which is codified at 28 U.S.C. §1332(d). The aggregated claims of the individual Class Members exceed the sum or value of $5,000,000, exclusive of interests and costs, and this is a class action in which more than two-thirds of the Proposed Plaintiff Class, on the one hand, and Defendant, on the other, are citizens of different states.

8.     This Court has personal jurisdiction over Defendant Harley-Davidson because Defendant Harley-Davidson has purposefully availed itself to this District's jurisdiction and authority, given Defendant's minimum contacts within this District through Defendant's extensive marketing, advertising, and sale of items throughout this District. Defendant has installed, organized, and overseen dealerships that sell Defendant's products, repair facilities that repair Defendant's products, and has advertised heavily throughout this District.

9.     Venue is proper in this District under 28 U.S.C. §1391 because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District. The Defendant sells and distributes its motorcycles throughout the United States and within this District.

## PARTIES

10.     Robert Humphries is a citizen of the State of South Carolina and resides in Spartanburg, South Carolina. Spartanburg is located within Spartanburg County, South Carolina.

11.    Defendant Harley-Davidson is a corporation organized and in existence under the laws of the State of Wisconsin. Defendant's corporate headquarters are located at: 3700 W Juneau Ave., Milwaukee, WI 53208.

12.    Plaintiff and Defendant are of diverse citizenship, as required by 28 U.S.C. § 1332.

13.    Defendant designs, manufactures, markets, distributes, services, repairs, sells, and leases motorcycles, including the Class Motorcycles, nationwide and in South Carolina. Defendant is the warrantor and distributor of the Class Motorcycles in the United States.

14.    Through various entities, Defendant markets, distributes, warrants, and sells Harley-Davidson motorcycles and parts for those motorcycles, including the Class Motorcycles, in multiple locations across the United States, including South Carolina.

## FACTUAL ALLEGATIONS

15.    Around June of 2022, Plaintiff purchased his 2022 Harley-Davidson FXLRS from Black Jack Harley-Davidson in Florence, South Carolina.

16.    Plaintiff's 2022 FXLRS Harley-Davidson is a motorcycle included within Defendant's Recall.[4] Plaintiff's motorcycle is black and has roughly 7,000 miles.

17.    Based on Harley-Davidson's active and persistent promotions touting the quality of its motorcycles and on Plaintiff's admiration of Harley-Davidson motorcycles, Plaintiff considered Harley-Davidson a quality company with a strong reputation for producing reliable motorcycles.

18.    In addition to Harley-Davidson's reputation (gained through marketing and promotion), Plaintiff decided on the 2022 Harley-Davidson FXLRS because he believed it was a

---

[4] *Id.*

high-quality motorcycle and that the motorcycle was highly reliable, that the motorcycle came with great technological features, and fitted Plaintiff's needs.

19.    Plaintiff has knowledge of this recall and has spent roughly two hours researching the Defect and possible fixes. Plaintiff has contacted Defendant's dealerships and repair centers in Greenville, Florence, and Spartanburg, South Carolina seeking repair for his Class Motorcycle. But, to no avail, having been informed that the part required for replacement is not in stock.

20.    In sum, the Recall is unfixable at this point. Plaintiff is now stuck with a Class Motorcycle that is liable to cause an accident and likely injure Plaintiff.

21.    Further, Plaintiff has been greatly inconvenienced by this Recall as he has had to seek alternative modes of transportation, considering that his Class Motorcycle is his main method of transportation.

22.    Since 2018, Defendant has designed, manufactured, distributed, sold, and leased the Class Motorcycles. Defendant has produced and sold, directly or indirectly, through dealers and other retail outlets, over 65,000 recalled motorcycles, including the Class Motorcycles in South Carolina  and nationwide.[5]

23.    As discussed in more detail below, the Class Motorcycles contain a design defect that causes a serious safety concern. That is, the rear shock absorber—specifically, the shock absorbers fastener—is defectively designed.

24.    Due to the design defect, the Class Motorcycles' shock absorber fastener may break causing the rear shock absorber adjuster to damage the rear tire causing a loss of tire pressure. This loss of tire pressure can lead to a loss of control and ultimately a higher risk of crashing.

---

[5] *Id.*

25.     Defendant, directly or indirectly, has sold tens of thousands of Class Motorcycles with this Fastener Defect nationwide.[6]

26.     Defendant's Recall, which includes a free fix-and-repair clause requiring Defendant to repair and replace the faulty parts, will cost Plaintiff hours of his time. And, as noted earlier, the part required for repair is unavailable.

27.     Furthermore, Defendant's Recall does not offer any reasonably foreseeable guarantee that the Fastener Defect will go away permanently. Rather, the Recall mentions installing a new shock absorber fastener, but mentions no testing or assurances that the new fastener will solve the issue fully.[7]

28.     Assuming that the Recall was effective and offered a true fix, which it does not, Plaintiff is still burdened with a motorcycle that has been devalued by Defendant's actions, because the value of a motorcycle with a known history of a shock absorber fastener defect is worth much less than a motorcycle with a safe rear shock absorber.

29.     This Recall is especially burdensome given the inherently dangerous nature of motorcycles, including motorcycles without any defect.

30.     Plaintiff, like every other Class Member, must spend time and money to transport himself and his defective Class Motorcycle to a Harley-Davidson-certified mechanic.

31.     For Plaintiff, this service center is at the local dealership, High Voltage Harley-Davidson near his home in Spartanburg, South Carolina.

32.     Plaintiff's repair-related commute is roughly a 10-minute drive or tow.

33.     In addition to the amount of time spent in repairing his motorcycle, Plaintiff faces another unneeded and unsolicited expense: the price of towing his motorcycle.

---

[6] *Id.*
[7] *Id.*

34.    The average cost of towing, per mile, is $4.75 a mile.[8] Given Plaintiff's roughly 10-mile commute, Plaintiff will have to pay $47.50 to have his Class Motorcycle safely transported from his home to the service center.

35.    Given the additional time it takes for a tow truck to arrive, roughly thirty minutes, Plaintiff will spend roughly forty minutes solely on transporting his motorcycle — unless, of course, one is to assume that Plaintiff drives his highly dangerous Class Motorcycle to the dealership.[9]

36.    Replacing a shock absorber takes anywhere from one to four hours.[10]

37.    If Plaintiff is to tow his motorcycle, the total time spent for the repairs will be within a range of one hour and ten minutes to four hours and ten minutes.

38.    In all, Defendant's Recall amounts to time and dollars needlessly taken from Plaintiff and other Class Motorcycle owners.

## CLASS ACTION ALLEGATIONS

39.    Plaintiff brings this action on behalf of himself and as a class action, pursuant to Fed. R. Civ. P. 23(a), 23(b)(2), and/or 23(b)(3). Specifically, the class and subclass are defined as follows:

a) **Nationwide Class:** All persons in the United States who purchased or leased any of the Class Motorcycles.

b) **South Carolina Subclass:** All persons from South Carolina who purchased or

---

[8] https://www.thezebra.com/resources/driving/how-much-does-towing-a-car-cost/#:~:text=The%20average%20cost%20per%20mile,mile%20on%20the%20high%20end.&text=Many%20towing%20companies%20may%20also,miles%20you%20need%20to%20go (last visited October 30, 2023).

[9] https://myautomachine.com/how-long-do-tow-trucks-take/ (last visited October 30, 2023).

[10] https://www.fixter.co.uk/blog/how-much-are-shock-absorbers/#:~:text=it's%20%C2%A372.-,How%20long%20does%20shock%20absorber%20replacement%20take%3F,between%201.5%20and%204%20hours (last visited October 30, 2023).

leased any of the Class Motorcycles.

40.    Together, the Nationwide Class and South Carolina Subclass will be collectively referred to as the "Class" or "Classes." Members of these Classes will be referred to as "Class Members".

41.    Plaintiff qualifies as a member of each of the proposed classes in the preceding paragraphs.

42.    Excluded from each of the putative classes are any person who falls within the definitions if the person is (i) an employee or independent contractor of Defendant; (ii) a relative of an employee or independent contractor of Defendant; (iii) an employee of the Court where this action is pending.

43.    The proposed class definitions in ¶ 38 as limited by ¶ 41 may be amended or modified from time to time.

44.    The particular members of (i) the Nationwide Class and (ii) the South Carolina Subclass are capable of being described without difficult managerial or administrative problems. The members of the putative classes are also readily identifiable from the information and records in the possession or control of Defendant or its affiliates and agents, and from public records.

45.    Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of his claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

46.    The Proposed Classes are so numerous that the joinder of all members is impracticable.

47.    This action has been brought and may be properly maintained on behalf of the Classes proposed herein under Federal Rule of Civil Procedure 23.

48.     **Numerosity: Fed. R. Civ. P. 23(a)(1)** Upon information and belief, the Class is so numerous that the joinder of all members is impracticable. While the exact number and identities of individual members of the Class are unknown at this time, such information is in the sole possession of Defendant and obtainable by Plaintiff only through the discovery process. Members of the Class may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. Mail, Electronic Mail, internet postings, social media, and/or published notice.

49.     **Typicality: Fed. R. Civ. P. 23(a)(3)** Plaintiff's claims are typical of the claims of the Class because Plaintiff purchased a Class Motorcycle that contained the same Fastener Defect found in all other Class Motorcycles.

50.     **Adequacy: Fed. R. Civ. P. 23(a)(4)** Plaintiff is an adequate class representative because his interests do not conflict with the interests of the Class that he seeks to represent. Plaintiff has retained counsel competent and highly experienced in complex and class-action litigation, and he intends to prosecute this action vigorously. Plaintiff and his counsel will fairly and adequately protect the interests of the Class.

51.     **Predominance and Superiority: Fed. R. Civ. P. 23(b)(3)** A class action is superior to all other available means for the fair and efficient adjudication of the claims of Plaintiff and Class Members, and questions of law and fact common to all Class Members predominate over questions affecting only individual Class Members. Class Members can be readily identified and notified based on, inter alia, Defendant's business records or other sources.

52.     **Common Questions of Fact and Law: Fed. R. Civ. P. 23(b)(4)** Common Questions of law and fact exist as to all members of the Class. These questions predominate over

the questions affecting individual Class Members. These common legal and factual questions include, but are not limited to:

 a. Whether Class Motorcycles contain the alleged Fastener Defect;

 b. Whether the Fastener Defect would be considered material by a reasonable consumer;

 c. Whether the Fastener Defect would constitute an unreasonable safety risk;

 d. Whether Defendant had a duty to disclose the Fastener Defect to Plaintiff and other Class Members;

 e. Whether Defendant knew or reasonably should have known of the Fastener Defect before it sold and leased Class Motorcycles to Plaintiff and Class Members;

 f. Whether the Fastener Defect has diminished the value of the Class Motorcycles;

 g. Whether the Fastener Defect is capable of being repaired;

 h. Whether Defendant should be declared financially responsible for notifying all Class Members of the problems with the Class Motorcycles and for the costs and expenses of repairing, replacing, or otherwise remedying the Fastener Defect;

 i. Whether Defendant is obligated to inform Class Members of their right to seek reimbursement for having paid to diagnose, repair, or replace their defective fasteners;

 j. Whether Defendant breached the implied warranty of merchantability pursuant to state law and/or the UCC;

 k. Whether Defendant breached its express warranties under state law and/or the UCC;

 l. Whether Defendant is liable for fraudulent omission;

m.  Whether Defendant was unjustly enriched;

n.  Whether Plaintiff and the other Class Members are entitled to damages and other monetary relief.

**CAUSES OF ACTION**

**COUNT I**

**BREACH OF EXPRESS WARRANTY**

53.  Plaintiff incorporates paragraphs 1-52 as if fully set forth herein.

54.  Plaintiff brings this count on behalf of himself and the Classes.

55.  Plaintiff and other Class Members formed a contract with Defendant at the time they purchased their Class Motorcycles. The terms of the contract include the promises and affirmations of fact and express warranties made by Defendant.

56.  The terms of the contract include the promises and affirmations of fact made by Defendant on the Class Motorcycles' packaging and through marketing and advertising, as described above.

57.  This labeling, marketing, and advertising constitute express warranties, and they became part of the basis of the bargain and are part of the standardized contract between Plaintiff and the members of the Classes and Defendant.

58.  As set forth above, Defendant purports, through its advertising, labeling, marketing, and packaging, to create an express warranty that the Class Motorcycles are safe for their intended use.

59.  Plaintiff and the members of the Classes performed all conditions precedent to Defendant's liability under this contract when they purchased the Class Motorcycles.

11

60.    Defendant breached express warranties about the Class Motorcycles and their qualities because the Class Motorcycles contained defects rendering them unsafe for their intended use; thus the Class Motorcycles do not conform to Defendant's affirmations and promises described above.

61.    Plaintiff and each of the members of the Classes would not have purchased or leased the Class Motorcycles had they known the true nature of the Fastener Defect.

62.    Due to Defendant's breach of warranty, Plaintiff and Class Members suffered and continue to suffer financial damage and injury, and are entitled to all damages, in addition to costs, interest, and fees, including attorneys' fees, as allowed by law.

63.    Plaintiff suffered injury through Defendant's conduct because he suffered economic loss and purchased a motorcycle that is now worthless and unsafe.

64.    Plaintiff also suffered economic loss because, due to Defendant's Recall, Plaintiff's motorcycle's resale value is diminished. When Plaintiff intends to sell or trade in his motorcycle, the motorcycle's reputation will harm the resale value and place Plaintiff in a much worse bargaining position than if Defendant had properly manufactured, designed, produced, distributed, and advertised Class Motorcycles.

65.    Plaintiff also suffered damages in that Plaintiff has spent and will spend hours and money in tending to Defendant's Recall. Plaintiff has been greatly inconvenienced by Defendant's Recall.

## COUNT II

## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

66.    Plaintiff incorporates Paragraphs 1-52 as if fully set forth herein.

67.    Plaintiff brings this count on behalf of himself and the Classes.

68.    Defendant is a merchant and was at all relevant times involved in the distributing, warranting, and/or selling of the Class Motorcycles.

69.    The Class Motorcycles are "goods" under the relevant laws, and Defendant knew or had reason to know of the specific use for which the Class Motorcycles, as goods, were purchased.

70.    Defendant entered into agreements with consumers to sell the Class Motorcycles to be used by Plaintiff and Class Members for personal use.

71.    The implied warranty of merchantability included with the sale of each Class Motorcycle means that Defendant guaranteed that the Class Motorcycles would be fit for the ordinary purposes for which motorcycles are used and sold, and would not be otherwise injurious to consumers. The implied warranty of merchantability is a critical part of the basis for the benefit of the bargain between Defendant, Plaintiff, and the Class Members.

72.    Defendant breached the implied warranty of merchantability because the Class Motorcycles are not fit for their ordinary purpose of providing reasonably reliable and safe transportation. After all, Defendant did not indicate that the Class Motorcycles would contain the Fastener Defect.

73.    Given that Plaintiff and Class Members are unable to safely drive the Class Motorcycles without risk of oil fires, the Class Motorcycles are not fit for their particular purpose of legal and safe transportation and usage. Defendant's Recall does nothing to truly address this risk. Rather, the Recall continues to replace parts within a defective system without repairing the underlying cause.

74.    Defendant's warranty expressly applies to the purchaser of the Class Motorcycles, creating privity between Defendant and Plaintiff and Class Members.

75.    Privity is not required because Plaintiff and Class Members are the intended beneficiaries of Defendant's warranties and sales. Defendant's warranties were designed for and intended to benefit the consumer only, including Plaintiff and Class Members.

76.    Defendant was provided sufficient notice of its breaches of implied warranties associated with the Class Motorcycles. Defendant was put on actual notice of its breach through the contract between Plaintiff and Class Members and Defendant, and through its review of consumer complaints as well. Defendant's own Recall demonstrates actual notice.

77.    Had Plaintiff, Class Members, and the consuming public known that the Class Motorcycles would not be provided with proper shock absorbers — that is, had they known of the Fastener Defect — they would not have purchased the Class Motorcycles, or they would have paid less for the  motorcycles.

78.    As a direct and proximate result of the foregoing, Plaintiff and the Classes suffered and continue to suffer financial damage and injury, and are entitled to all damages, in addition to costs, interest, and fees, including attorneys' fees, as allowed by law.

79.    Plaintiff suffered injury in that he purchased a worthless motorcycle. For all intents and purposes, Plaintiff's motorcycle is now a notoriously unsafe motorcycle that tends to lose tire pressure.

80.    Plaintiff also suffered economic loss because, due to Defendant's Recall, Plaintiff's motorcycle's resale value is now diminished. When Plaintiff intends to sell or trade in his motorcycle, the motorcycle's reputation will harm the resale value and place Plaintiff in a much worse bargaining position than if Defendant had properly manufactured, designed, produced, distributed, and advertised Class Motorcycles.

81.    Plaintiff has suffered damages in that Plaintiff has been inconvenienced by Defendant's Recall and accompanying required repairs. As discussed above, Plaintiff will spend hours upon hours tending to Defendant's Recall. Had Defendant produced a motorcycle that was roadworthy and reliable, Plaintiff would not have had to spend hours of his life tending to this Recall. Plaintiff did not bargain for, or pay for, a motorcycle that poses a horrendous crash risk due to its Fastener Defect.

## COUNT III

### VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT

### (15 U.S.C. § 2301 *ET SEQ.*)

82.    Plaintiff incorporates paragraphs 1-52 as if fully set forth herein.

83.    Plaintiff brings this Count individually and on behalf of the Classes.

84.    Plaintiff is a "consumer" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 ET SEQ ("MMWA").

85.    Defendant is a "supplier" and "warrantor" with the meaning of the MMWA.

86.    The Class motorcycles are "consumer products" within the meaning of the MMWA.

87.    15 U.S.C. § 2301(d)(1) provides a cause of action for any consumer who is damaged by a warrantor's failure to comply with a written or implied warranty.

88.    Defendant's express warranties are written warranties within the meaning of the MMWA.

89.    Defendant breached its warranties by offering for sale and selling the Class Motorcycles, which were by design and construction defective and unsafe due to the Fastener Defect.

90.     Defendant's actions subjected Plaintiff and the Classes to danger; those actions also caused monetary damages, because the Class Motorcycles are inherently worth less than they would have been without the Fastener Defect.

91.     Additionally, Plaintiff and the Class Members suffered damages in that they have been greatly inconvenienced by this Recall and Defect, as Plaintiff and Class Members have had to collectively spend thousands of hours and dollars repairing the Fastener Defect.

92.     Defendant has breached and continues to breach its written and implied warranties of safety and reliability, thereby damaging Plaintiff and the Class, when the motorcycles fail to perform due to the Fastener Defect.

93.     Due to these breaches, Plaintiff and the Classes have suffered damages.

94.     Plaintiff and the Classes seek full compensatory, punitive, and consequential damages as allowed by law, and any other relief to which Plaintiff and the Classes may be entitled.

95.     Plaintiff and the Classes suffered injury through Defendant's conduct in that Plaintiff and the Classes are now owners of motorcycles that are worth significantly less, given the Defect and the notoriety thereof.

96.     Plaintiff and the Classes suffered injury through Defendant's conduct in that Plaintiff and the Classes have, or will have to, spend hours upon hours of their time, and thousands of dollars in towing fees, in repairing these Class Motorcycles. Defendant is willing to repair the motorcycles for free; nonetheless, Plaintiff and the Classes must still spend hours in time and thousands of dollars in bringing their dangerous motorcycles to Defendant's dealerships for repair.

## COUNT IV

### NEGLIGENT DESIGN DEFECT

97.     Plaintiff incorporates Paragraphs 1-52 as if fully set forth herein.

16

98.     Plaintiff brings this claim against Defendant on behalf of himself and the Class Members.

99.     Defendant owed Plaintiff and the Classes a duty to reasonably and safely design, manufacture, market, and sell the Class Motorcycles.

100.    Defendant breached this duty by defectively designing and manufacturing the Class Motorcycles, which rendered the motorcycles not fit or suitable for their intended purposes.

101.    Additionally, Defendant's defective design caused monetary damages to Plaintiff and the Classes as the Class Motorcycles now are worth less compared to the Class Motorcycle's value before the Defect became known, given the notoriety of the Defect.

102.    Defendant did not exercise due care in the production of the Class Motorcycles. Defendant's design malfunctions horribly, while many shock absorbers, in all sorts of similar existing motorcycles, do not have this Fastener Defect.

103.    Plaintiff suffered injury through Defendant's conduct because he suffered economic loss when he purchased a motorcycle that is now worthless and unsafe.

104.    Plaintiff also suffered economic loss because, due to Defendant's Recall, Plaintiff's motorcycle's resale value is now diminished. When Plaintiff intends to sell or trade in his motorcycle, the motorcycle's reputation will harm the resale value and place Plaintiff in a much worse bargaining position than if Defendant had properly manufactured, designed, produced, distributed, and advertised Class Motorcycles.

105.    Plaintiff also suffered damages in that Plaintiff has spent hours, and will spend hours more, tending to Defendant's Recall. Plaintiff has been greatly inconvenienced by Defendant's Recall.

106.    The design of the Class Motorcycles' defect is unacceptable because other motorcycles produced by other companies and manufacturers work properly and do not have this same defect. In fact, for decades, Defendant has produced other motorcycles for decades without any similar defects.

107.    Plaintiff's Class Motorcycle is in virtually the same condition as it was in when it left Defendant's factory.

108.    Further evidence of the Class Motorcycles' poor quality, as mentioned earlier, is the lifespan of the defective parts, when compared to industry norms for the lifespan of similar parts.

## COUNT V

### FRAUD BY OMISSION OR FRAUDULENT CONCEALMENT

109.    Plaintiff incorporates Paragraphs 1-52 as if fully set forth herein.

110.    Plaintiff brings this count on behalf of himself and the Classes.

111.    Defendant knew that the Class Motorcycles suffered from an inherently defective fastener, were defectively designed and/or manufactured, and were not suitable for their intended use. Defendant designed, engineered, and produced the Class Motorcycles; therefore, it created its own Fastener Defect and knew of that Defect.

112.    Defendant concealed from and failed to disclose to Plaintiff and Class Members the defective nature of the Class Motorcycles.

113.    The fact that Defendant's Class Motorcycles contained the Fastener Defect is a material fact, because shock absorbers are one of the most critical motorcycle safety devices.

114.    The shock absorbers of the Class Motorcycles are faulty and cause a drop in tire pressure.

115.   Defendant knew of the falsity of the safety of Fastener Defect and/or recklessly disregarded the truth or falsity of the dangerous nature of the Fastener Defect.

116.   Defendant intended for Plaintiff to act upon such falsity as part of Defendant's commercial operations to sell motorcycles.

117.   Plaintiff and Class Members would not have purchased the Class Motorcycles had they known of the Fastener Defect. Plaintiff and the Class did not know of such Fastener Defect; in purchasing Class Motorcycles, they relied upon Defendant's false presentation of safety.

118.   Plaintiff did not know of and could not have discovered the Fastener Defect unless Plaintiff were to disassemble the Class Motorcycle and inspect the Fasteners throughout the Class Motorcycles. This possibility exists outside of reality, because—even if such a possibility would occur to an ordinary consumer—it is highly improbable that any Class Motorcycle dealer or dealership would allow for such intensive inspection.

119.   Defendant was under a duty to Plaintiff and Class Members to disclose the defective nature of the Class Motorcycles because:

a.   Defendant was in a superior position to know the true state of facts about the Fastener Defect contained in the Class Motorcycles;

b.   The omitted facts were material because they directly impact the safety of the Class Motorcycles;

c.   Defendant knew the omitted facts regarding the defect were not known to or reasonably discoverable by Plaintiff and Class Members;

d.   Defendant actively concealed the defective nature of the Class Motorcycles from Plaintiff and Class Members.

120.    The facts concealed or not disclosed by Defendant to Plaintiff and the other Class Members are material. A reasonable person would have considered those facts to be important in deciding whether to purchase or lease Defendant's Class Motorcycles or pay a lesser price for them. Specifically, whether a motorcycle becomes inoperable when the shock absorbers fail is a material safety concern.

121.    Had Plaintiff and Class Members known about the defective nature of the Class Motorcycles, they would not have purchased or leased the Class Motorcycles, or would have paid less for them.

122.    Defendant concealed, or failed to disclose, the true nature of the design and/or manufacturing defects contained in the Class Motorcycles, in order to induce Plaintiff and Class Members to act thereon. Plaintiff and the other Class Members justifiably relied on Defendant's omissions to their detriment. This detriment is evident from Plaintiff's and Class Members' purchase or lease of Defendant's defective Class Motorcycles.

123.    As a direct and proximate result of Defendant's misconduct, Plaintiff and Class Members have suffered and will continue to suffer actual damages. Plaintiffs and the Classes reserve their right to elect either to (a) rescind their purchase or lease of the Class Motorcycles and obtain restitution or (b) affirm their purchase or lease of the Class Motorcycles and recover damages.

124.    Defendant's acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiff's and the Class's rights and well-being to enrich Defendant. Defendant's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

125.    Plaintiff suffered injury through Defendant's conduct in that he suffered economic loss and purchased a worthless, unsafe Class Motorcycle.

126.    Plaintiff also suffered economic loss because, due to Defendant's Recall, Plaintiff's motorcycle's resale value is now diminished. When Plaintiff intends to sell or trade in his Class Motorcycle, the motorcycle's reputation will harm the resale value and place Plaintiff in a much worse bargaining position than if Defendant had properly manufactured, designed, produced, distributed, and advertised Class Motorcycles.

127.    Plaintiff also suffered damages in that Plaintiff has spent hours, and will spend hours more, tending to Defendant's Recall. Plaintiff has been greatly inconvenienced by Defendant's Recall.

## COUNT VI

### UNJUST ENRICHMENT

128.    Plaintiff incorporates paragraphs 1-52 as if fully set forth herein.

129.    Plaintiff brings this count on behalf of himself and the Classes.

130.    Plaintiff, and the other members of the Classes, conferred benefits on Defendant in the form of monies paid to purchase Defendant's worthless Class Motorcycles.

131.    Defendant voluntarily accepted and retained this benefit. Defendant has knowledge and appreciation of this benefit, which was conferred upon it by and at the expense of Plaintiff and the Class Members.

132.    Because this benefit was obtained unlawfully—namely, by selling and accepting compensation for the Class Motorcycles without providing working Fasteners in the Class Motorcycles — it would be unjust and inequitable for Defendant to retain the benefit without paying the value thereof.

133.    The circumstances, as described further herein, are such that it would be inequitable for Defendant to retain the ill-gotten benefit without paying the value thereof to Plaintiff and the Class Members.

134.    Defendant manufactured, marketed, and sold the Class Motorcycles under the guise of these  motorcycles being safe and operable. Instead, Defendant sold motorcycles with shock absorber issues that present risks. And rather than refunding or reimbursing Plaintiff and Class Members the difference in resale value, Defendant has offered to simply replace the Class Motorcycles' defective fasteners with other defective fasteners without fixing the root cause of the Defect.

135.    Because it would be unjust and inequitable for Defendant to retain the non-gratuitous benefits conferred on it by Plaintiff and members of the Classes, Defendant must pay restitution to Plaintiff and members of the Classes for its unjust enrichment, as ordered by the Court.

## COUNT VII

### NEGLIGENCE

136.    Plaintiff incorporates paragraphs 1-52 as if fully set forth herein.

137.    Plaintiff brings this count on behalf of himself and the Classes.

138.    Defendant caused Class Motorcycles to be sold, distributed, marketed, promoted, and/or used by Plaintiff and the Proposed Classes.

139.    At all times relevant to this litigation, Defendant had a duty to exercise reasonable care in the design, research, marketing, advertisement, supply, promotion, packaging, sale, and distribution of Class Motorcycles, including the duty to take all reasonable steps necessary to provide effective Fasteners in the Class Motorcycle's shock absorbers.

140.    Defendant breached this duty by producing Class motorcycles with the Fastener Defect. For decades, Defendant has produced other motorcycles without this Fastener Defect; that in itself is evidence that Defendant did not exercise proper care in producing the Class Motorcycles. As further evidence of Defendant's lack of care, many other manufacturers produce motorcycles with effective shock absorbers and fasteners.

141.    Accordingly, at all times relevant to this litigation, Defendant knew or, in the exercise of reasonable care, should have known that not providing effective shock absorbers could cause or be associated with Plaintiff's and Class Members' injuries.

142.    Defendant's alleged negligence included:

a.    Selling and/or distributing the Class Motorcycles while negligently and/or intentionally not providing effective shock absorbers; and

b.    Systematically failing to provide consumers with effective shock absorbing systems in multiple states.

143.    As a direct and proximate result of Defendant's negligence, Plaintiff and the Classes have suffered and will continue to suffer actual monetary damages.

144.    But for Defendant's negligent design, production, and marketing of Class Motorcycles, Plaintiff and the Class would not be injured as they would not have purchased the worthless Class Motorcycles.

145.    Plaintiff's and Class Members' injuries were foreseeable, because at the time of purchase of Defendant's Product, Defendant had received complaints from Plaintiff and Class Members regarding failure to provide safely and effectively assembled motorcycle parts.

146.    Further, it is foreseeable that a motorcycle with a defective shock absorbing system would be worthless as it would be an incredibly dangerous motorcycle to drive. It is also

reasonably foreseeable that Defendant's Recall would harm the resale value of the Class Motorcycles, given that a motorcycle with defective Fasteners would be worth less to a consumer than a motorcycle with working Fasteners.

147.    Due to Defendant's breach, Plaintiff and the Class were harmed in that they are now driving motorcycles with faulty Fasteners, or motorcycles whose Fasteners may break at any time, given Defendant's confounding lack of due care in its design and product.

148.    Plaintiff and the Class Members seek actual damages, attorney's fees, costs, and any other just and proper relief available.

149.    Plaintiff suffered injury through Defendant's conduct because he suffered economic loss by purchasing a motorcycle that is now worthless and unsafe.

150.    Plaintiff also suffered economic loss because, due to Defendant's Recall, Plaintiff's motorcycle's resale value is now diminished. When Plaintiff and the Class intend to sell or trade in their respective Class Motorcycles, the motorcycles' poor reputation would harm the resale value, compared to if Defendant had properly manufactured, designed, produced, distributed, and advertised Class Motorcycles.

151.    Plaintiff also suffered damages because he has spent hours, and will spend hours more, tending to Defendant's Recall. Plaintiff and Class Members must also incur time and costs to tow their Class Motorcycles to Defendant's dealerships. Plaintiff and the Class have been greatly inconvenienced by Defendant's Recall.

## **PRAYER FOR RELIEF**

**WHEREFORE**, the Plaintiff, on behalf of himself and members of the Classes, requests that the Court enter judgment in their favor and against Defendant, awarding as follows:

A.  Certifying the Class as proposed herein, designating Plaintiff as Class representative, and appointing undersigned counsel as Class Counsel;

B.  Declaring that Defendant is financially responsible for notifying the Proposed Classes Members of the pendency of this action;

C.  Awarding all actual, general, special, incidental, statutory, and consequential damages to which Plaintiff and Class Members are entitled;

D.  Scheduling a trial by jury in this action;

E.  Awarding pre and post-judgment interest on any amounts awarded, as permitted by law;

F.  Awarding costs including reasonable attorneys' fees, court costs, and other litigation expenses; and,

G.  Any other relief the Court may deem just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff, individually and on behalf of all those similarly situated, hereby requests a jury trial, pursuant to Federal Rule of Civil Procedure 38, on any and all claims so triable.


Dated: October 30th, 2023


Respectfully Submitted,

/s/ *Paul J. Doolittle*
Paul J. Doolittle (Fed ID #6012)
Blake G. Abbott (Fed ID #13354)
**POULIN | WILLEY |**
**ANASTOPOULO, LLC**
32 Ann Street

Charleston, SC 29403
Tel: 803-222-2222
Fax: 843-494-5536
Email: paul.doolittle@poulinwilley.com
          blake.abbott@poulinwilley.com