UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
SPARTANBURG DIVISION

| | |
|---|---|
| ROBERT HUMPHRIES, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>HARLEY-DAVIDSON, INC.,<br><br>Defendant. | **Civil Action No.** 7:23-cv-05524<br><br>**JURY TRIAL DEMANDED** |

**AMENDED CLASS ACTION COMPLAINT**

Plaintiff, Robert Humphries ("Plaintiff"), individually and on behalf of all others similarly situated, respectfully submits the following Class Action Complaint against Defendant Harley-Davidson, Inc. ("Harley-Davidson" or "Defendant"). Plaintiff makes the following allegations, except as to allegations specifically pertaining to Plaintiff, upon information and belief based on, among other things, the investigation of counsel and review of public documents.

**PRELIMINARY STATEMENT**

1.      Motorcycle manufacturers must follow certain basic rules and procedures. When a motorcycle manufacturer sells a motorcycle, it has a duty to ensure that the motorcycle functions properly and safely for its advertised use and is free from defects. Upon discovering a defect, a motorcycle manufacturer must explicitly disclose the defect and either correct the defect or cease selling the motorcycle.

1

2.  Plaintiff brings this action on behalf of himself, and all similarly situated persons who purchased or leased any of the following motorcycles, which are defective ("Class Motorcycles")[1]:

   a) 2018-2019 FLDE;

   b) 2018-2021 FLHC;

   c) 2018-2023 FLHCS;

   d) 2018 and 2023 FLHCS ANV;

   e) 2020-2023 FXLRS;

   f) 2022-2023 FXLRST; and

   g) 2022 FXRST

3.  Plaintiff brings this action to remedy various violations of law in connection with Defendant's manufacturing, marketing, advertising, selling, warranting, and servicing of the Class Motorcycles.

4.  Specifically, these Class motorcycles have a fastener securing the rear shock absorber which may break ("Fastener Defect") and allow the rear shock absorber adjuster to damage the rear tire, causing a loss of tire pressure. A loss of tire pressure can lead to a loss of vehicle control, all but guaranteeing a crash.[2]

5.  In August of 2023, Defendant recalled the Class Motorcycles. In total, this Recall included over 65,000 motorcycles produced by Defendant Harley-Davidson.[3]

---

[1] https://www.consumeraffairs.com/recalls/harley-davidson-recalls-65000-2018-2023-motorcycles-090823.html (last visited January 25, 2024).
[2] *Id.*
[3] *Id.*

6. The allegations herein are based on personal knowledge as to Plaintiff's own experience and are made as to other matters based on an investigation by counsel, including counsel's analysis of publicly available information.

## JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction over this action under the Class Action Fairness Act, the relevant portion of which is codified at 28 U.S.C. §1332(d). The aggregated claims of the individual Class Members exceed the sum or value of $5,000,000, exclusive of interests and costs, and this is a class action in which more than two-thirds of the Proposed Plaintiff Class, on the one hand, and Defendant, on the other, are citizens of different states.

8. This Court has personal jurisdiction over Defendant Harley-Davidson because Defendant Harley-Davidson has purposefully availed itself to this District's jurisdiction and authority, given Defendant's minimum contacts within this District through Defendant's extensive marketing, advertising, and sale of items throughout this District. Defendant has installed, organized, and overseen dealerships that sell Defendant's products, repair facilities that repair Defendant's products, and has advertised heavily throughout this District.

9. Venue is proper in this District under 28 U.S.C. §1391 because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District. The Defendant sells and distributes its motorcycles throughout the United States and within this District.

## PARTIES

10. Robert Humphries is a citizen of the State of South Carolina and resides in Spartanburg, South Carolina. Spartanburg is located within Spartanburg County, South Carolina.

11. Defendant Harley-Davidson is a corporation organized and in existence under the laws of the State of Wisconsin. Defendant's corporate headquarters are located at: 3700 W Juneau Ave., Milwaukee, WI 53208.

12. Plaintiff and Defendant are of diverse citizenship, as required by 28 U.S.C. § 1332.

13. Defendant designs, manufactures, markets, distributes, services, repairs, sells, and leases motorcycles, including the Class Motorcycles, nationwide and in South Carolina. Defendant is the warrantor and distributor of the Class Motorcycles in the United States.

14. Through various entities, Defendant markets, distributes, warrants, and sells Harley-Davidson motorcycles and parts for those motorcycles, including the Class Motorcycles, in multiple locations across the United States, including South Carolina.

## FACTUAL ALLEGATIONS

15. Around June of 2022, Plaintiff purchased his new 2022 Harley-Davidson FXLRS from Black Jack Harley-Davidson at 2691 Alex Lee Blvd, Florence, SC 29506.

16. Black Jack Harley Davidson is an authorized Harley Davidson dealer.

17. According to an official NHTSA Recall Report[4], on August 22, 2023, Harley-Davidson filed a Part 573 vehicle report that addressed the vehicle (original equipment) population potentially affected by this condition. (NHTSA Recall No. 23V591). At that time, Harley-Davidson had received 33 warranty claims, field reports, or service reports between June 28, 2018 and August 2, 2023 in which contact between the Shock Absorber Adjuster and rear tire was alleged, four of which alleged air loss (including one property damage claim and no injuries).

18. Plaintiff's 2022 FXLRS Harley-Davidson is a motorcycle included within Defendant's Recall.[5]

---

[4] https://static.nhtsa.gov/odi/rcl/2023/RCLRPT-23V591-3911.PDF
[5] *Id.*

4

19. Based on Harley-Davidson's active and persistent promotions touting the quality of its motorcycles and on Plaintiff's admiration of Harley-Davidson motorcycles, Plaintiff considered Harley-Davidson a quality company with a strong reputation for producing reliable motorcycles.

20. In addition to Harley-Davidson's reputation (gained through marketing and promotion), Plaintiff decided on the 2022 Harley-Davidson FXLRS because he believed it was a high-quality motorcycle and that the motorcycle was highly reliable, that the motorcycle came with great technological features, and fitted Plaintiff's needs.

21. Through normal everyday use, the rear shock absorber on Plaintiff's Class Motorcycle may become damaged and become inoperable. A damaged rear shock absorber may damage the rear tire, resulting in loss of tire pressure and increasing the risk of a crash.

22. Plaintiff has knowledge of this recall and has spent roughly two hours researching the Defect and possible fixes. Plaintiff has contacted Defendant's dealerships and repair centers in Greenville, Florence, and Spartanburg, South Carolina seeking repair for his Class Motorcycle. But, to no avail, having been informed that the part required for replacement is not in stock.

23. Plaintiff is now stuck with a Class Motorcycle that is at an increased risk of causing an accident, as he has been unable to have his Class Motorcycle repaired.

24. Further, Plaintiff has been greatly inconvenienced by this Recall as he has had to seek alternative modes of transportation, considering that his Class Motorcycle is his main method of transportation.

25. Since 2018, Defendant has designed, manufactured, distributed, sold, and leased the Class Motorcycles. Defendant has produced and sold, directly or indirectly, through dealers

and other retail outlets, over 65,000 recalled motorcycles, including the Class Motorcycles in South Carolina and nationwide.[6]

26.     As discussed in more detail below, the Class Motorcycles contain a design defect that causes a serious safety concern. That is, the rear shock absorber—specifically, the shock absorbers fastener—is defectively designed.

27.     Due to the design defect, the Class Motorcycles' shock absorber fastener may break causing the rear shock absorber adjuster to damage the rear tire causing a loss of tire pressure. This loss of tire pressure can lead to a loss of control and ultimately a higher risk of crashing.

28.     Defendant, directly or indirectly, has sold tens of thousands of Class Motorcycles with this Fastener Defect nationwide.[7]

29.     Defendant's Recall, which includes a free fix-and-repair clause requiring Defendant to repair and replace the faulty parts, will cost Plaintiff hours of his time. And, as noted earlier, the part required for repair is unavailable.

30.     Furthermore, Defendant's Recall does not offer any reasonably foreseeable guarantee that the Fastener Defect will go away permanently. Rather, the Recall mentions installing a new shock absorber fastener, but mentions no testing or assurances that the new fastener will solve the issue fully.[8]

31.     Assuming that the Recall was effective and offered a true fix, which it does not, Plaintiff is still burdened with a motorcycle that has been devalued by Defendant's actions, because the value of a motorcycle with a known history of a shock absorber fastener defect is worth much less than a motorcycle with a safe rear shock absorber.

---

[6] *Id.*
[7] *Id.*
[8] *Id.*

32. This Recall is especially burdensome given the inherently dangerous nature of motorcycles, including motorcycles without any defect.

33. Plaintiff, like every other Class Member, must spend time and money to transport himself and his defective Class Motorcycle to a Harley-Davidson-certified mechanic.

34. For Plaintiff, this service center is at the local dealership, High Voltage Harley-Davidson near his home in Spartanburg, South Carolina.

35. Plaintiff's repair-related commute is roughly a 10-minute drive or tow.

36. In addition to the amount of time spent in repairing his motorcycle, Plaintiff faces another unneeded and unsolicited expense: the price of towing his motorcycle.

37. The average cost of towing, per mile, is $4.75 a mile.[9] Given Plaintiff's roughly 10-mile commute, Plaintiff will have to pay $47.50 to have his Class Motorcycle safely transported from his home to the service center.

38. Given the additional time it takes for a tow truck to arrive, roughly thirty minutes, Plaintiff will spend roughly forty minutes solely on transporting his motorcycle — unless, of course, one is to assume that Plaintiff drives his highly dangerous Class Motorcycle to the dealership.[10]

39. Replacing a shock absorber takes anywhere from one to four hours.[11]

---

[9] https://www.thezebra.com/resources/driving/how-much-does-towing-a-car-cost/#:~:text=The%20average%20cost%20per%20mile,mile%20on%20the%20high%20end.&text=Many%20towing%20companies%20may%20also,miles%20you%20need%20to%20go (last visited January 25, 2024).

[10] https://myautomachine.com/how-long-do-tow-trucks-take/ (last visited January 25, 2024).

[11] https://www.fixter.co.uk/blog/how-much-are-shock-absorbers/#:~:text=it's%20%C2%A372.-,How%20long%20does%20shock%20absorber%20replacement%20take%3F,between%201.5%20and%204%20hours (last visited January 25, 2024).

40. If Plaintiff is to tow his motorcycle, the total time spent for the repairs will be within a range of one hour and ten minutes to four hours and ten minutes. Defendant's offered repair of the Defect will not compensate Plaintiff or the class for additional time and costs such as these.

41. In all, Defendant's Recall amounts to time and dollars needlessly taken from Plaintiff and other Class Motorcycle owners.

## CLASS ACTION ALLEGATIONS

42. Plaintiff brings this action on behalf of himself and as a class action, pursuant to Fed. R. Civ. P. 23(a), 23(b)(2), and/or 23(b)(3). Specifically, the class and subclass are defined as follows:

   a) **Nationwide Class:** All persons in the United States who purchased or leased any of the Class Motorcycles.

   b) **South Carolina Subclass:** All persons from South Carolina who purchased or leased any of the Class Motorcycles.

43. Together, the Nationwide Class and South Carolina Subclass will be collectively referred to as the "Class" or "Classes." Members of these Classes will be referred to as "Class Members".

44. Plaintiff qualifies as a member of each of the proposed classes in the preceding paragraphs.

45. Excluded from each of the putative classes are any person who falls within the definitions if the person is (i) an employee or independent contractor of Defendant; (ii) a relative of an employee or independent contractor of Defendant; (iii) an employee of the Court where this action is pending.

46. The proposed class definitions in ¶ 38 as limited by ¶ 41 may be amended or modified from time to time.

47. The particular members of (i) the Nationwide Class and (ii) the South Carolina Subclass are capable of being described without difficult managerial or administrative problems. The members of the putative classes are also readily identifiable from the information and records in the possession or control of Defendant or its affiliates and agents, and from public records.

48. Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of his claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

49. The Proposed Classes are so numerous that the joinder of all members is impracticable.

50. This action has been brought and may be properly maintained on behalf of the Classes proposed herein under Federal Rule of Civil Procedure 23.

51. **Numerosity: Fed. R. Civ. P. 23(a)(1)** Upon information and belief, the Class is so numerous that the joinder of all members is impracticable. While the exact number and identities of individual members of the Class are unknown at this time, such information is in the sole possession of Defendant and obtainable by Plaintiff only through the discovery process. Members of the Class may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. Mail, Electronic Mail, internet postings, social media, and/or published notice.

52. **Typicality: Fed. R. Civ. P. 23(a)(3)** Plaintiff's claims are typical of the claims of the Class because Plaintiff purchased a Class Motorcycle that contained the same Fastener Defect found in all other Class Motorcycles.

53.     **Adequacy: Fed. R. Civ. P. 23(a)(4)** Plaintiff is an adequate class representative because his interests do not conflict with the interests of the Class that he seeks to represent. Plaintiff has retained counsel competent and highly experienced in complex and class-action litigation, and he intends to prosecute this action vigorously. Plaintiff and his counsel will fairly and adequately protect the interests of the Class.

54.     **Predominance and Superiority: Fed. R. Civ. P. 23(b)(3)** A class action is superior to all other available means for the fair and efficient adjudication of the claims of Plaintiff and Class Members, and questions of law and fact common to all Class Members predominate over questions affecting only individual Class Members. Class Members can be readily identified and notified based on, inter alia, Defendant's business records or other sources.

55.     **Common Questions of Fact and Law: Fed. R. Civ. P. 23(b)(4)** Common Questions of law and fact exist as to all members of the Class. These questions predominate over the questions affecting individual Class Members. These common legal and factual questions include, but are not limited to:

   a. Whether Class Motorcycles contain the alleged Fastener Defect;
   b. Whether the Fastener Defect would be considered material by a reasonable consumer;
   c. Whether the Fastener Defect would constitute an unreasonable safety risk;
   d. Whether Defendant had a duty to disclose the Fastener Defect to Plaintiff and other Class Members;
   e. Whether Defendant knew or reasonably should have known of the Fastener Defect before it sold and leased Class Motorcycles to Plaintiff and Class Members;
   f. Whether the Fastener Defect has diminished the value of the Class Motorcycles;

    g.   Whether the Fastener Defect is capable of being repaired;

    h.   Whether Defendant should be declared financially responsible for notifying all Class Members of the problems with the Class Motorcycles and for the costs and expenses of repairing, replacing, or otherwise remedying the Fastener Defect;

    i.   Whether Defendant is obligated to inform Class Members of their right to seek reimbursement for having paid to diagnose, repair, or replace their defective fasteners;

    j.   Whether Defendant was unjustly enriched; and

    k.   Whether Plaintiff and the other Class Members are entitled to damages and other relief.

## CAUSES OF ACTION

## COUNT I

### UNJUST ENRICHMENT

56.    Plaintiff incorporates paragraphs 1-55 as if fully set forth herein.

57.    Plaintiff brings this count on behalf of himself and the Classes.

58.    Plaintiff, and the other members of the Classes, conferred benefits on Defendant in the form of monies paid to purchase Defendant's worthless Class Motorcycles.

59.    Plaintiff upheld his end of the bargain by agreeing to purchase and make payments on the Class Motorcycle.

60.    Defendant voluntarily accepted and retained this benefit. Defendant has knowledge and appreciation of this benefit, which was conferred upon it by and at the expense of Plaintiff and the Class Members.

61.Defendant realized a direct benefit from the purchase of the Class Motorcycle since it was purchased from one of Defendant's authorized retailers.

62.Because this benefit was obtained unlawfully—namely, by selling and accepting compensation for the Class Motorcycles without providing working Fasteners in the Class Motorcycles — it would be unjust and inequitable for Defendant to retain the benefit without paying the value thereof.

63.The circumstances, as described further herein, are such that it would be inequitable for Defendant to retain the ill-gotten benefit without paying the value thereof to Plaintiff and the Class Members.

64.Defendant manufactured, marketed, and sold the Class Motorcycles under the guise of these motorcycles being safe and operable. Instead, Defendant sold motorcycles with shock absorber issues that presented risks. Rather than refunding or reimbursing Plaintiff and Class Members the difference in resale value, or making up for the time his Class Motorcycle was inoperable due to the increased danger of accident and injury, or reimbursing Plaintiff for his additional time, money, and stress that he has had to endure because of the Defect, Defendant has offered to simply replace the Class Motorcycles' defective fasteners with other defective fasteners without fixing the root cause of the Defect.

65.Because it would be unjust and inequitable for Defendant to retain the non-gratuitous benefits conferred on it by Plaintiff and members of the Classes, Defendant must pay restitution to Plaintiff and members of the Classes for its unjust enrichment, as ordered by the Court.

## **PRAYER FOR RELIEF**

**WHEREFORE**, the Plaintiff, on behalf of himself and members of the Classes, requests that the Court enter judgment in their favor and against Defendant, awarding as follows:

A. Certifying the Class as proposed herein, designating Plaintiff as Class representative, and appointing undersigned counsel as Class Counsel;

B. Declaring that Defendant is financially responsible for notifying the Proposed Classes Members of the pendency of this action;

C. Awarding all actual, general, special, incidental, statutory, and consequential damages to which Plaintiff and Class Members are entitled;

D. Scheduling a trial by jury in this action;

E. Awarding pre and post-judgment interest on any amounts awarded, as permitted by law;

F. Awarding costs including reasonable attorneys' fees, court costs, and other litigation expenses; and,

G. Any other relief the Court may deem just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff, individually and on behalf of all those similarly situated, hereby requests a jury trial, pursuant to Federal Rule of Civil Procedure 38, on any and all claims so triable.

Dated: January 25, 2024

Respectfully Submitted,

/*s/ Paul J. Doolittle*
Paul J. Doolittle (Fed ID #6012)

13

Blake G. Abbott (Fed ID #13354)
**POULIN | WILLEY |**
**ANASTOPOULO, LLC**
32 Ann Street
Charleston, SC 29403
Tel: 803-222-2222
Fax: 843-494-5536
Email: paul.doolittle@poulinwilley.com
      blake.abbott@poulinwilley.com