IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
SPARTANBURG DIVISION

| | |
|---|---|
| Robert Humphries, *individually and on behalf of all others similarly situated*,<br><br>　　　　　　　　Plaintiff,<br><br>　　v.<br><br>Harley-Davidson Inc.,<br><br>　　　　　　　　Defendant. | Case No. 7:23-cv-05524-JDA<br><br>**OPINION AND ORDER** |

This matter is before the Court on Defendant's motion to dismiss and Plaintiff's consent motion for a status conference. [Docs. 14; 24.] The motion to dismiss has been fully briefed [Docs. 19; 22], and both motions are ripe for review.

**BACKGROUND**[1]

Plaintiff, on behalf of himself and others similarly situated, filed this suit following Defendant's recall of over 65,000 defective motorcycles. [Doc. 12 ¶¶ 2, 5.] Plaintiff purchased his new 2022 Harley-Davidson FXLRS motorcycle in June 2022. [*Id.* ¶ 15.] On August 22, 2023, Defendant notified the National Highway Traffic Safety Administration ("NHTSA") that it was conducting a safety recall to correct a defect in which the fastener that secures the rear shock absorber adjuster may fracture, potentially allowing that adjuster to contact the rear tire. [*Id.* ¶¶ 4, 17]; *see* Part 573 Safety Recall Report 23V-591, https://static.nhtsa.gov/odi/rcl/2023/RCLRPT-23V591-7632.PDF (last

---

[1] The facts included in this Background section are taken directly from the Amended Complaint. [Doc. 12.]

visited July 2, 2025).[2]  If the rear shock absorber adjuster contacts the rear tire, the tire could lose pressure, which could in turn cause a crash.  [Doc. 12 ¶ 4]; Part 573 Safety Recall Report 23V-591.  To remedy the defect, as part of the recall, Defendant will install new hardware at no charge to the customer.  Part 573 Safety Recall Report 23V-591.

Plaintiff's motorcycle is included in the recall.  [Doc. 12 ¶ 18.]  After Plaintiff learned of the recall, he spent roughly two hours researching the defect and possible fixes.  [*Id.* ¶ 22.]  At the time he filed the Amended Complaint, Plaintiff had contacted three of Defendant's dealerships and repair centers seeking a repair for his motorcycle but was told that the part required for replacement was not in stock.  [*Id.*]  Plaintiff alleges he is now stuck with a motorcycle that has an increased risk of causing an accident.  [*Id.* ¶ 23.]  He contends he has been inconvenienced by the recall because his motorcycle is his main method of transportation, and he has had to seek alternative modes of transportation.  [*Id.* ¶ 24.]  He also alleges that remedying the defect will cost him and other putative class members time and money, including the time and cost to have the motorcycles towed to a dealership for repair.  [*Id.* ¶¶ 29, 33–41.]  Plaintiff estimates that it will cost him between one hour and ten minutes and four hours and ten minutes and $47.50 to repair his motorcycle.  [*Id.* ¶¶ 37, 40.]  Finally, Plaintiff alleges that even after a repair under the recall, his motorcycle "has been devalued by Defendant's actions, because the value of a motorcycle with a known history of a shock absorber fastener defect is worth much less than a motorcycle with a safe rear shock absorber."  [*Id.* ¶ 31.]

---

[2] "[A] court may properly take judicial notice of matters of public record without converting a motion to dismiss into a motion for summary judgment." *Megaro v. McCollum*, 66 F.4th 151, 157 (4th Cir. 2023); *see Sharp v. FCA US LLC*, 637 F. Supp. 3d 454, 458–59 (E.D. Mich. 2022) (taking judicial notice of documents from NHTSA's official website on a motion to dismiss).

Plaintiff filed this action on October 30, 2023 [Doc. 1], and he filed an Amended Complaint on January 25, 2024 [Doc. 12].  The Amended Complaint asserts one cause of action for unjust enrichment.  [*Id.* ¶¶ 56–65.]  Plaintiff seeks class certification; damages; pre- and post-judgment interest; attorneys' fees, costs, and expenses; and any other relief the Court deems just and proper.  [*Id.* at 13.]

## APPLICABLE LAW

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a claim should be dismissed if it fails to state a claim upon which relief can be granted.  When considering a motion to dismiss, the court should "accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." *Mylan Lab'ys, Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993).  Even so, the court "need not accept the legal conclusions drawn from the facts" nor "accept as true unwarranted inferences, unreasonable conclusions, or arguments."  *E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000).  Further, for purposes of a Rule 12(b)(6) motion, a court may rely on only the complaint's allegations and those documents attached as exhibits or incorporated by reference.  *See Simons v. Montgomery Cnty. Police Officers*, 762 F.2d 30, 31–32 (4th Cir. 1985).  If matters outside the pleadings are presented to and not excluded by the court, the motion is treated as one for summary judgment under Rule 56 of the Federal Rules of Civil Procedure.  Fed. R. Civ. P. 12(d).

With respect to well pleaded allegations, the United States Supreme Court explained the interplay between Rule 8(a) and Rule 12(b)(6) in *Bell Atlantic Corp. v. Twombly*:

> Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is

3

> entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

550 U.S. 544, 555 (2007) (footnote and citations omitted); *see also* 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice, and Procedure* § 1216, at 235–36 (3d ed. 2004) ("[T]he pleading must contain something more . . . than a bare averment that the pleader wants compensation and is entitled to it or a statement of facts that merely creates a suspicion that the pleader might have a legally cognizable right of action.").

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. The plausibility standard reflects the threshold requirement of Rule 8(a)(2)—the pleader must plead sufficient facts to show he is entitled to relief, not merely facts consistent with the defendant's liability. *Twombly*, 550 U.S. at 557; *see also Iqbal*, 556 U.S. at 678 ("Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." (internal quotation marks omitted)). Accordingly, the plausibility standard requires a plaintiff to articulate facts that, when accepted as true,

demonstrate that the plaintiff has stated a claim that makes it plausible the plaintiff is entitled to relief. *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009).

## DISCUSSION

Defendant argues that Plaintiff's unjust enrichment claim should be dismissed because Plaintiff cannot satisfy the third element of a claim for unjust enrichment—that it would be inequitable for the defendant to retain the benefit without paying the plaintiff for its value—and that the case should be dismissed as prudentially moot. [Doc. 14-1 at 10–17.] The Court agrees that the case is prudentially moot.

The Fourth Circuit Court of Appeals recognizes the doctrine of prudential mootness. *See S-1 v. Spangler*, 832 F.2d 294, 297 (4th Cir. 1987) (concluding the court "need not decide whether [a settlement] moots the case in strict constitutional case or controversy terms, because we conclude that we should treat this appeal as moot for prudential reasons"). Prudential mootness rests on a court's discretion to determine that "[i]n some circumstances, a controversy, not actually moot, is so attenuated that considerations of prudence and comity for coordinate branches of government counsel the court to stay its hand, and to withhold relief it has the power to grant." *Chamber of Com. of U.S. v. U.S. Dep't of Energy*, 627 F.2d 289, 291 (D.C. Cir. 1980). As the Tenth Circuit Court of Appeals has explained, "if events so overtake a lawsuit that the anticipated benefits of a remedial decree no longer justify the trouble of deciding the case on the merits, equity may demand not decision but dismissal." *Winzler v. Toyota Motor Sales U.S.A., Inc.*, 681 F.3d 1208, 1210 (10th Cir. 2012) (noting that the "[p]rudential mootness doctrine often makes its appearance in cases where . . . a coordinate branch of government steps in to promise the relief [a plaintiff] seeks").

Recently, numerous courts have held that a recall renders a case prudentially moot. *E.g.*, *Winzler*, 681 F.3d 1208; *Letson v. Ford Motor Co.*, No. 23-10420, 2024 WL 845844 (E.D. Mich. Feb. 28, 2024); *Diaz v. Ford Motor Co.*, No. 23-10029, 2023 WL 6164455 (E.D. Mich. Sept. 21, 2023); *Ward-Richardson v. FCA US LLC*, 690 F. Supp. 3d 1372 (N.D. Ga. 2023); *Pacheco v. Ford Motor Co.*, No. 22-11927, 2023 WL 2603937 (E.D. Mich. Mar. 22, 2023); *Sharp v. FCA US LLC*, 637 F. Supp. 3d 454 (E.D. Mich. 2022). For example, in *Letson*, the plaintiffs filed a putative class action against Ford Motor Company ("Ford"), alleging a defect that caused fuel injectors to crack, which increased the risk of engine fires. 2024 WL 845844, at *1. Ford initiated a recall of the class vehicles, agreeing to repair the vehicles without charge. *Id.* The court concluded that the case was prudentially moot where Ford had issued a recall to remedy the defect and subjected itself to NHTSA's continuing oversight and authority. *Id.* at *3. The court rejected the plaintiffs' argument that their diminished-value injuries remained even after the recall, determining that Ford's recall "restor[ed] their vehicle's values and eliminat[ed] plaintiffs' overpayment injuries." *Id*.

Similarly in *Ward-Richardson*, the plaintiffs filed a putative class action against FCA US LLC ("FCA"), which manufactures Jeep Wranglers, alleging a defect in the electrical/computer system. 690 F. Supp. 3d at 1374–75. FCA initiated a recall of the class vehicles, offering to repair the defect without charge. *Id.* at 1375–76. The court concluded that the case was prudentially moot and that the prudential mootness doctrine applies to claims for monetary relief in addition to claims for equitable relief.[3] *Id.* at 1377–

---

[3] Although the Fourth Circuit has not addressed whether the doctrine applies to claims seeking monetary relief, the Court agrees with the District Court for the Northern District

6

81. The court specifically noted that the recall invoked the oversight of NHTSA, which "is vested with statutory authority (and responsibility) to monitor each safety recall to make sure owners receive safe, free, and effective remedies from manufacturers according to the Safety Act and Federal regulations." *Id.* at 1379 (internal quotation marks omitted); *see also id.* at 1380–81; 49 U.S.C. § 30120(e) ("If the Secretary decides a manufacturer has not reasonably met the remedy requirements, the Secretary shall order the manufacturer to take specified action to meet those requirements and may take any other action authorized under this chapter.").

Here, by issuing a recall, Defendant has subjected itself to the continuing oversight of NHTSA. *See Winzler*, 681 F.3d at 1211 ("By filing documents with NHTSA notifying it of a defect, [the manufacturer] set into motion the great grinding gears of a statutorily mandated and administratively overseen national recall process [and] subjected itself to the continuing oversight of (and potential penalties imposed by) NHTSA."). This Court agrees with the reasoning of its sister courts that have concluded that a recall renders the case prudentially moot. *See Letson*, 2024 WL 845844; *Diaz* 2023 WL 6164455; *Ward-*

---

of Georgia that "no b[r]ight-line rule exists" concerning the application of the prudential mootness doctrine to damages claims and, instead, whether it applies "turns on the unique facts and circumstances of each case." *Ward-Richardson*, 690 F. Supp. 3d at 1378. The Court concludes that the facts and circumstances of this case support applying the doctrine to Plaintiff's claim for monetary relief just as many of the cases the Court relies on in deciding this case have done. *See Letson*, 2024 WL 845844; *Ward-Richardson*, 690 F. Supp. 3d 1372; *Pacheco*, 2023 WL 2603937; *Sharp*, 637 F. Supp. 3d 454. Additionally, that unjust enrichment, the only claim alleged by Plaintiff, is an equitable doctrine, *see Regions Bank v. Wingard Props.*, 715 S.E.2d 348, 356 (S.C. Ct. App. 2011) (noting that "[u]njust enrichment is an equitable doctrine"); *see also Thomerson v. DeVito*, 844 S.E.2d 378, 385 (S.C. 2020) (cautioning that "[a] request for monetary relief should not be viewed in isolation to convert what is otherwise an equitable claim to a legal claim"), further supports application of the prudential mootness doctrine in this case.

7

*Richardson*, 690 F. Supp. 3d 1372; *Pacheco*, 2023 WL 2603937; *Sharp*, 637 F. Supp. 3d 454; *see also Winzler*, 681 F.3d at 1211 ("Given all this, there remains not enough value left for the courts to add in this case to warrant carrying on with the business of deciding its merits.").

Plaintiff argues that the case is not prudentially moot because no circumstances have developed "that would prevent this Court from giving effective remedy to the Plaintiff and the Class." [Doc. 19 at 11.]  First, Plaintiff contends that "the feasibility of the fix is in dispute."  [*Id.*]  To the extent Plaintiff challenges whether Defendant's repair will fix the defect, such hypothetical possibilities that a recall will not adequately repair a defect have been consistently rejected by courts.  *See, e.g.*, *Ward-Richardson*, 690 F. Supp. 3d at 1381 ("The assurances provided by NHTSA's statutorily mandated oversight outweigh [the plaintiffs'] speculation that [the recall] will ultimately prove unsuccessful in correcting the challenged defect."); *Sharp*, 637 F. Supp. 3d at 469 ("Plaintiffs offer only a hypothetical possibility that their vehicles will not be adequately repaired.  This is insufficient for the Court to proceed with the case."). [4]  To the extent Plaintiff bases his feasibility argument on his inability to have the repair completed before filing this action, the District Court for the Eastern District of Michigan addressed a similar factual scenario in *Sharp*, where the defendant manufacturer had "at one point . . . indicated that a remedy was not yet available." 637 F. Supp. 3d at 467.  Relying on *Winzler*, the court reiterated that, "'to find this case moot, we need (and do) only take notice of the existence of filings with NHTSA purporting to identify a defect and announce recall'" because what matters "'is that

---

[4] This same reasoning applies to Plaintiff's argument that the defect may recur and evade review.  [Doc. 19 at 11–12.]  Plaintiff offers only speculation that the defect will recur after repair.

8

materials *purporting* to identify a defect and to announce a recall are on file with NHTSA,'" as these materials "'set in motion the statutorily mandated and administratively overseen national recall process.'" *Id.* (quoting *Winzler*, 681 F.3d at 1212). Similarly, this case is prudentially moot because Plaintiff seeks "relief already being provided by coordinate branches of government and . . . offers no reason why the courts should duplicate those efforts." *Winzler*, 681 F.3d at 1209.

Plaintiff also argues that "there exists a question of whether [he] overpaid for the motorcycle given its defect." [Doc. 19 at 11.] However, as other courts have explained, the recall remedies the defect, "thereby restoring [the motorcycles'] values and eliminating [any] overpayment injuries."[5] *Letson*, 2024 WL 845844, at *3; *see also Ward-Richardson*, 690 F. Supp. 3d at 1379–80 (noting that "any additional relief [the court] could award would constitute an impermissible double recovery" because the recall "promises to remove the very defect that forms the basis of [the plaintiffs'] diminished-value claim"). Plaintiff further contends that he and other putative class members will have to spend additional time and money to have their motorcycles repaired and that they have incurred damages for loss of time of use of the motorcycles. [Doc. 19 at 11.] However, the Court

---

[5] Plaintiff relies on *In re Duramax Diesel Litig.*, 298 F. Supp. 3d 1037, 1072 (E.D. Mich. 2018), and *Raymo v. FCA US LLC*, 475 F. Supp. 3d 680, 709, 711 (E.D. Mich. 2020), for the proposition that he "suffered an injury in the form of an overpayment" at "[t]he moment [he] purchased his vehicle." [Doc. 19 at 11.] However, the court in *In re Duramax* did not address the doctrine of prudential mootness at all; instead, the question before the court was whether the plaintiffs had standing under the Racketeer Influenced and Corrupt Organizations Act. 298 F. Supp. 3d at 1067–73. And, although the *Raymo* court concluded that the doctrine of prudential mootness did not prevent the plaintiffs from seeking monetary damages in connection with a defect under an overpayment theory of damages, as this Court has already explained, the facts and circumstances of *this* case support application of the prudential mootness doctrine to Plaintiff's claim for monetary damages.

concludes that those damages are not recoverable on an unjust enrichment claim. For an unjust enrichment claim, the measure of restitution damages is the value of the benefit conferred on the defendant. *Stringer Oil Co. v. Bobo*, 465 S.E.2d 366, 369 (S.C. Ct. App. 1995) ("It is basic hornbook law that although the plaintiff's costs of performance might represent some evidence of value, they do not represent a recoverable item of restitution themselves."). Under the facts and circumstances alleged in this case, the Court sees no effective relief it can provide and concludes that it is appropriate to exercise its discretion to dismiss this action on prudential mootness grounds.[6]

## CONCLUSION

Wherefore, for these reasons, Defendant's motion to dismiss [Doc. 14] is GRANTED, and Plaintiff's consent motion for a status conference [Doc. 24] is FOUND AS MOOT. This action is DISMISSED without prejudice.

IT IS SO ORDERED.

s/ Jacquelyn D. Austin
United States District Judge

July 3, 2025
Greenville, South Carolina

---

[6] "Because prudential mootness is arguably the narrowest of the . . . bases [Defendant] has suggested for dismissal, and because it is sufficient to that task, [the Court has] no need to discuss any of [Defendant's] other arguments for the same result." *Winzler*, 681 F.3d at 1215.